UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KESHAUNE SUTTON                                    CIVIL ACTION

VERSUS                                            NO. 24-2523

PORTS AMERICA LOUISIANA, L.L.C.                   SECTION M (1)

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Ports America Louisiana, L.L.C. ("Ports America").[1]  Plaintiff Keshaune Sutton responds in opposition,[2] and Ports America replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion as to Sutton's Title VII sexual harassment, sex-based discrimination, and race-based discrimination claims and denies the motion as to Sutton's Title VII retaliation claim.

I.      **BACKGROUND**

The present action arises out of an employment dispute between Sutton and Ports America. Sutton is a member of the International Longshoremen's Association, AFL-CIO, Clerks and Checkers Union, Local 1497 ("the Union").[4]  The Union provides labor to certain waterfront employers within the Port of New Orleans who are parties to a longstanding collective bargaining agreement ("CBA") with the Union.[5]  Utilizing Union-provided labor, the employers provide stevedoring services to customer vessels.[6]  One of those employers is Ports America.[7]

---

[1] R. Doc. 15.
[2] R. Doc. 26.
[3] R. Doc. 27.
[4] R. Doc. 15-4 at 1.
[5] *Id.*
[6] *Id.* at 2.
[7] *Id.*

The CBA sets the terms and conditions applicable to a Union member dispatched to work for Ports America (and all other member employers), including the Union members' seniority for hiring preference purposes.[8]  The lowest possible seniority classification for Union members is "casual," and employees in seniority groups A through D outrank "casuals" for seniority purposes.[9]  When jobs were to be assigned to Union members, seniority groups A through D were contractually entitled to be called upon first.[10]  Then, only those jobs which remained after groups A through D had received offers for jobs would be offered to Union members with a "casual" classification.[11]  According to Ports America, employers would notify the Union of their labor needs for the day, and then Union dispatchers would notify Union members – in order of their seniority – by telephone of the offer of employment.[12]  Sutton, however, alleges that Ports America could forego this practice and request specific Union members by name, regardless of their seniority classification, to fulfill its daily labor needs.[13]

According to Sutton, she has been performing assignments for Ports America since August 2022.[14]  She alleges that on November 22, 2023, her fellow Union member Nelson Castillo sexually harassed her while they were performing work for Ports America.[15]  She claims that Castillo approached her and Terrill Roberson, the clerk in charge, pointing out that Roberson's phone was in his vest pocket with his camera facing out.[16]  Then, says Sutton, Castillo asked Roberson if he was recording Sutton.[17]  Castillo accompanied his question with an obscene gesture

---

[8] *Id.*
[9] *Id.* at 2-3.
[10] *Id.* at 3.
[11] *Id.*
[12] *Id.*
[13] R. Doc. 26-1 at 1-2.
[14] *Id.* at 1.
[15] *Id.* at 4.
[16] *Id.*
[17] *Id.*

mimicking masturbation.[18]  Sutton alleges that she then objected to the comment, but that Castillo continued laughing and told Roberson, "After you're done with the video, give it to me, and let me masturbate to it next," while continuing to gesture obscenely.[19]  After the incident, Sutton says she reported the behavior to Ports America management, including Stephen Cabal (the breakbulk and container freight station manager).[20]  Ports America claims that Sutton also notified another Ports America manager, Salvador Calderera (the terminal manager).[21]  That day, Cabal, Roberson, Castillo, and Sutton all met to discuss Castillo's conduct toward Sutton.[22]  It is undisputed that Castillo received a verbal warning at the meeting.[23]

Sutton alleges that, prior to the incident, she was regularly requested by name on a daily basis to work for Ports America.[24]  Then, says Sutton, around November 2023, Ports America stopped requesting her by name, resulting in a significant decrease in her employment hours.[25]  On April 7, 2024, Sutton filed a Charge of Discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") based on the November 22, 2023 incident.[26]  In the charge, she alleged sex- and race-based discrimination in violation of Title VII of the Civil Rights Act, citing Ports America's inaction in responding to Castillo's workplace misconduct.[27]  She filed a second charge on October 18, 2024, alleging that Ports America retaliated against her for her November 22, 2023 internal report of Castillo's conduct by drastically reducing her shifts, and that Ports America retaliated against her for her EEOC charge by drastically reducing her shifts even

---

[18] *Id.*
[19] *Id.*
[20] R. Docs. 26-1 at 5; 15-4 at 4.
[21] R. Docs. 26-4; 15-4 at 4.
[22] R. Docs. 15-4 at 4; 26 at 8; 26-1 at 5.
[23] R. Docs. 15-4 at 4; 26-1 at 3.
[24] R. Doc. 26-1 at 1-2.
[25] *Id.* at 2.
[26] R. Doc. 26-2.
[27] *Id.* at 1.

more.[28]  She also reasserted the grounds for her first EEOC charge – that Ports America's inaction following the November 22, 2023 incident constituted sex- and race-based discrimination.[29]

On October 22, 2024, Sutton filed a complaint in this Court against Ports America, raising four claims.[30]  First, she asserted a Title VII hostile-work-environment claim, referencing the November 22, 2023 incident with Castillo and Ports America's alleged inaction and retaliation.[31]  Second, she raised a Title VII sex-based discrimination claim, also arising out of the November 22, 2023 incident, Ports America's alleged inaction, and the alleged resulting retaliation.[32]  Third, she asserted a Title VII race-based discrimination claim, citing the factual bases for her prior two claims as well as alleging that Ports America retaliated against black employees who made complaints, and that it generally gave white employees preferential access to higher-paying jobs more quickly than black employees.[33]  Fourth and finally, she raised a Title VII retaliation claim against Ports America, alleging that Ports America decreased the amount of shifts given to Sutton as a result of her internal complaint against Castillo and her two EEOC charges.[34]

## II.    PENDING MOTION

In its summary-judgment motion, Ports America argues that it is entitled to summary judgment on each of Sutton's four claims.  In a footnote preceding its argument, Ports America states that Sutton has admitted there is no direct evidence of harassment or discrimination, and as a result, its argument "follow[s] the *McDonnell Douglas* burden-shifting framework applicable to efforts to establish such claims via circumstantial evidence."[35]  It further explains that it had

---

[28] R. Doc. 26-3 at 1-2.
[29] *Id.*
[30] R. Doc. 2 at 3-27.
[31] *Id.* at 3-8, 21-22.
[32] *Id.* at 8-12, 22-24.
[33] *Id.* at 12-17, 24-25.
[34] *Id.* at 17-21, 25-27.
[35] R. Doc. 15-1 at 5 n.12.

legitimate, nondiscriminatory reasons for any actions it took toward Sutton.[36]  As a result, Ports America says that the ultimate burden of proof has shifted back to Sutton, "who must offer significantly probative evidence tending to establish that her sex or race actually motivated the action(s) about which she complains."[37]

Ports America then addresses the merits of Sutton's claims.  First, it argues that Sutton cannot establish two of the five elements of her *prima facie* sexual harassment or hostile-work-environment claim.  It says that Sutton points only to a "lone incident of alleged sex-based, hostile-environment harassment," and that as a matter of law, a single incident is not sufficiently severe and pervasive to create a hostile work environment.[38]  Second, it says that, even assuming the allegations are sufficiently severe and pervasive, Sutton cannot show that Ports America failed to take prompt remedial action.[39]  It explains that Sutton, Castillo, Cabal, and Roberson met "[w]ithin hours of the incident," and that Castillo apologized and never again "acted in an objectionable manner toward [Sutton]."[40]

Second, Ports America argues that Sutton cannot establish two elements of her *prima facie* claim for sex-based discrimination under Title VII.[41]  Ports America submits that she cannot show it took an adverse employment action against her because it does not select its daily laborers; it instead notifies the Union of the amount of daily laborers needed, and then the Union contacts eligible workers in order of seniority.[42]  Then, highlighting Castillo's higher seniority classification, Ports America urges that Castillo is not a "similarly situated comparator" for

---

[36] *Id.*
[37] *Id.*
[38] *Id.* at 6-7 (quote at 6).
[39] *Id.* at 8.
[40] *Id.*
[41] *Id.* at 9-11.
[42] *Id.* at 9-10.

purposes of the third *prima facie* element of Sutton's claim.[43]  As a result, says Ports America, Sutton has no evidence of a similarly situated comparator treated more favorably than she was and thus cannot meet her summary-judgment burden on her Title VII sex discrimination claim.[44]

Next, Ports America contends that Sutton's race-based discrimination claim under Title VII also cannot survive a summary-judgment motion.  Because race- and sex-based discrimination claims have the same *prima facie* elements, Ports America reiterates the arguments it advanced in connection with Sutton's sex-based discrimination claim: that it took no adverse action against Sutton, and that she cannot point to a similarly situated comparator whom Ports America treated more favorably.[45]  And where the factual allegations constituting Sutton's race-based discrimination claim differ from her sex-based discrimination claim, Ports America posits that the allegations are "specious at best" and do not carry Sutton's summary-judgment burden.[46] Alternatively, Ports America submits that even if Sutton could show an adverse action and a similarly situated comparator, she cannot show that Ports America's alleged adverse employment action against her was because of her race, as required to prevail on her claim.

Finally, in connection with Sutton's Title VII sex- and race-based retaliation claim, Ports America argues that she cannot establish two of the three *prima facie* elements of the claim.[47] Again, Ports America claims that it did not take an adverse employment action against her because the Union, rather than Ports America, chooses which daily laborers are called to work.[48]  It also asserts that she has provided no evidence that would establish a causal connection between her protected status and/or activity and the alleged adverse action.[49]  Ports America says that even if

---

[43] *Id.* at 10.
[44] *Id.* at 10-11.
[45] *Id.* at 14-15.
[46] *Id.* at 12-14.
[47] *Id.* at 15.
[48] *Id.* at 16.
[49] *Id.*

Sutton could establish her *prima facie* claim, it has satisfied its burden of production under the *McDonnell Douglas* framework – a legitimate, nondiscriminatory reason for any purported adverse action – so Sutton now has the burden to provide "significantly probative evidence tending to prove her claim of retaliation."[50] It submits she offers only speculation and conclusory allegations to support her claim and thus cannot satisfy that burden.[51]

In opposition, Sutton asserts that summary judgment is improper on all of her claims. First, regarding her sexual harassment or hostile-work-environment claim, she concedes that the alleged conduct is confined to a single incident but argues that where "a single instance of conduct is severe enough on its own to create a hostile work environment, then it need not be pervasive."[52] She submits that a reasonable jury could find that Castillo's conduct was sufficiently severe to alter a term or condition of Sutton's employment.[53] Further, she contends that Ports America's meeting with her, Castillo, Cabal, and Roberson after the incident was not "prompt remedial action" because Ports America "took no action to discipline" Castillo.[54]

Then, addressing her retaliation claim, Sutton argues that, although the Union assigned individual workers to work, the Union president, Michael Hoelzel, testified that Ports America "had a practice of requesting specific casuals by name, and Ms. Sutton was regularly requested until she reported the harassment."[55] She posits that the temporal proximity between her complaint and her removal from the schedule supports causation.[56] Finally, Sutton says that Ports America's stated reason for the adverse action is that the Union, rather than Ports America, controls dispatch

---

[50] *Id.* at 16-17.
[51] *Id.*
[52] R. Doc. 26 at 6-7 (quote at 6) (citing *Abbt v. City of Hou.*, 28 F.4th 601, 608 (2022)).
[53] *Id.* at 7-8.
[54] *Id.* at 8.
[55] *Id.* at 12-13 (quote at 12).
[56] *Id.* at 13.

of daily laborers, but because Ports America requests laborers by name, that reason is pretextual.[57]

Next, Sutton argues that her claim for race-based discrimination also survives Ports America's summary-judgment motion. She points to two pieces of evidence: (1) her testimony "that a white female who began working the same day as her was promoted to a payroll position" while she remained in more physically demanding work for lower pay, and (2) her testimony about an instance of disparate disciplinary action in which she says she was disciplined for an action actually committed by a white colleague, and when Ports America discovered the truth, the white colleague faced no discipline.[58] She says that, when viewed together, the incidents "establish a pattern of differential treatment" that supports her discrimination claim.[59] Finally, she submits that she "need not show identical comparators," only sufficient evidence from which a jury could conclude that race was a motivating factor.[60]

In its reply, Ports America asserts that, on Sutton's sexual harassment or hostile-work-environment claim, even if the "severe or pervasive" element is disjunctive and she need not show pervasiveness, Castillo's alleged conduct is still insufficiently severe to qualify as actionable workplace harassment under governing law.[61] Also regarding her harassment claim, Ports America maintains that, although Sutton claims the meeting was not "remedial action" because Castillo was not disciplined, the meeting amounted to effective discipline because, as Sutton admits, Castillo never made her feel uncomfortable again.[62]

Further, Ports America says that, on her remaining claims, Sutton fails to provide significantly probative evidence.[63] Regarding the "adverse employment action" element, Ports

---

[57] *Id.*
[58] *Id.* at 14.
[59] *Id.* at 15.
[60] *Id.*
[61] R. Doc. 27 at 1-3.
[62] *Id.* at 3-4.
[63] *Id.* at 4.

America relies on the sham-affidavit doctrine to argue that Sutton's and Hoelzel's testimony of Ports America's practice to request employees by name should be disregarded.[64]   But Ports America submits that, even considering their testimony, Sutton's time records, provided for the first time in its reply, show that the 11-day break in Sutton's assignments to any terminal, which she alleges was retaliatory and/or discriminatory, "is entirely consistent with similar breaks in assignment throughout her time being assigned by the Union to work for [Ports America]."[65] Further, Ports America urges that the demand for the kind of labor which the Union provides to it and other employers "is inevitably unstable and inconsistent as a matter of industry norms," so it is not unusual for "casual" workers such as Sutton to experience gaps in daily labor.[66]   Ports America also argues that there is only "abject speculation" to support the claim that it stopped requesting her by name or that any such action occurred "as a means of retaliation."[67]

Finally, on Sutton's discrimination claims, Ports America points out that Sutton "was forced to admit during her deposition testimony that she actually was *not* disciplined for those incidents; she only *thought* that she was going to be."[68]   It also notes that Sutton makes no allegations that the individuals she claims received more favorable treatment than her were similarly situated to her.[69]

## III.    LAW & ANALYSIS

### A.  Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[64] *Id.* at 4 n.8.
[65] *Id.* at 5-7 (quote at 7).
[66] *Id.* at 7.
[67] *Id.* at 8.
[68] *Id.* (emphasis in original).
[69] *Id.*

any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*,

572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

**1. Sexual Harassment or Hostile-Work-Environment Claim**

Title VII of the Civil Rights Act of 1964 "makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)). The elements of a sexual harassment or hostile-work-environment claim are that "(1) [the plaintiff] is a member of a protected class; (2) [s]he suffered unwelcomed harassment; (3) the harassment was based on [her] membership in a protected class;

(4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *Id.* at 433 (quoting *West v. City of Hous.*, 960 F.3d 736, 741 (5th Cir. 2020)). In the present action, the parties dispute only whether there is a genuine issue of material fact as to the fourth and fifth *prima facie* elements – whether Castillo's conduct was severe or pervasive enough to alter a term or condition of Sutton's employment, and whether Ports America took prompt remedial action.

The Court first considers the fifth *prima facie* element, "prompt remedial action." A defendant will not be liable under Title VII, even where harassing conduct occurred, if it "took 'prompt remedial action' to protect the claimant." *Williams-Boldware v. Denton Cnty.,* 741 F.3d 635, 640 (5th Cir. 2014) (citing *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004)). Whether an employer's response "constitutes prompt remedial action is a fact-specific inquiry and 'not every response by an employer will be sufficient' to absolve the employer of liability under Title VII." *Id.* (quoting *Hockman*, 407 F.3d at 329). While an employer's response must be "'reasonably calculated to halt the harassment,'" *id.* (quoting *Hockman*, 407 F.3d at 329), "[e]mployers are not required to impose draconian penalties upon the offending employee" to satisfy the prompt-remedial-action requirement. *Id.* Indeed, "in circumstances where the offending conduct is infrequent or isolated, a reprimand may qualify as a prompt remedial measure." *Id.* Further, whether the purported harassment ceased after the employer's response is an appropriate consideration "'in determining whether the employer's actions were remedial.'" *Id.* at 641 (quoting *Skidmore v. Precision Printing & Packing, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999)).

Based on the undisputed facts, the Court holds that the meeting constituted prompt remedial action. Sutton's argument that the meeting did not constitute "prompt remedial action"

because Ports America "took no action to discipline Mr. Castillo" is unpersuasive.[70]  Sutton admits

that the alleged harassment was limited to "a single episode."[71]  Further, Sutton acknowledges that

Cabal had a conversation with Castillo after she reported the alleged harassment and concedes that

Castillo was given "a verbal warning."[72]  And, according to her deposition testimony, which is not

contradicted by any other evidence, Castillo never harassed Sutton again after the meeting.[73]

Based on the foregoing,  Ports America's verbal reprimand was a sufficient response to Sutton's

allegations of sexual harassment.  *See id.* at 640 ("[I]n circumstances where the offending conduct

is infrequent or isolated, a reprimand may qualify as a prompt remedial measure."); *Houston v.*

*EBI Cos.*, 53 F.3d 1281 (5th Cir. 1995) (upholding summary judgment dismissing a hostile-work-

environment claim where a white doctor made a racially insensitive comment to a black registered

nurse, and hospital leadership's prompt reprimand of the doctor caused the conduct to cease,

concluding that the leadership's response constituted prompt remedial action).

Further, it is not genuinely disputed that the meeting was sufficiently prompt.  Ports

America submits that the meeting occurred within hours of its managers learning of Sutton's

complaint,[74] and it provides deposition testimony in which Sutton explains that the incident

occurred at about 7:40 a.m., and the meeting occurred at about 1:00 p.m. that same day.[75]  In her

opposition, Sutton points to no evidence creating a genuine dispute about the timing of the meeting.

Therefore, because Ports America "took prompt remedial action calculated to halt the harassment,"

*Williams-Boldware*, 741 F.3d at 641, it is entitled to judgment as a matter of law, and this Court

---

[70] R. Doc. 26 at 8.
[71] R. Doc. 26-1 at 8.
[72] *Id.* at 3.
[73] R. Doc. 15-2 at 28.
[74] R. Doc. 15-1 at 8.
[75] R. Doc. 15-2 at 20-21.

need not address whether the conduct was severe or pervasive enough to alter a term or condition of Sutton's employment.

### 2. Sex- and Race-Based Discrimination Claim

In addition to Title VII's protection against a hostile work environment, it also "forbids employers from discriminating against an employee 'with respect to her compensation, terms, conditions, or privileges of employment, because of her race, color, religion, sex, or national origin.'" *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 648 (5th Cir. 2025) (alterations omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)).  To prevail on a Title VII discrimination claim, a plaintiff "must show that she (1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group." *Id.* at 649 (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)).  On summary judgment, the burden-shifting framework adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Title VII discrimination claims which rely only on circumstantial evidence.  *Shahrashoob*, 125 F.4th at 148-49.  Under that framework, a plaintiff-employee must make out a *prima facie* case of discrimination, at which point the burden of production shifts to the defendant-employer to offer a legitimate, nondiscriminatory reason for its action.  *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021).  Then, the burden shifts back to the employee to show that the employer's cited reason is pretextual.  *Id.* at 282.

Sutton's complaint alleges that Ports America discriminated against her on the basis of both race and sex.  Regarding both of her discrimination claims, Ports America's motion for summary judgment places only two of the four *prima facie* elements in dispute: whether Sutton

14

suffered an adverse employment action by Ports America, and whether she has evidence of a similarly situated comparator who was treated more favorably. Even assuming that Sutton could point to an adverse employment action,[76] both of her discrimination claims fail at the summary-judgment stage because she cannot point to evidence of a similarly situated comparator for either claim.

Again, the fourth element of a *prima facie* claim for discrimination under Title VII is that a plaintiff "was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group." *Shahrahshoob*, 125 F.4th at 649. To satisfy this *prima facie* element, a plaintiff "must point to another person who was (1) outside of her protected class; (2) similarly situated to her; and (3) treated better than her." *Id.* at 651. "In determining whether employees are similarly situated, [the Fifth Circuit] has emphasized that employees do not need to be in 'identical' circumstances – only 'nearly identical.'" *Id.* (quoting *Harville v. City of Hou.*, 945 F.3d 870, 875 (5th Cir. 2019)). Two employees are considered to be in "nearly identical circumstances" when the "employees 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Id.* (quoting *Harville*, 945 F.3d at 875). Finally, a plaintiff must point to evidence in the record tending to support her allegation that a comparator is similarly situated – "[w]hen a plaintiff gives only a conclusory explanation about why an individual is an appropriate comparator, the plaintiff's discrimination claim fails." *Id.* at 652 (citing *Ayorinde v. Team Indus. Servs., Inc.*, 121 F.4th 500, 507 (5th Cir. 2024)).

In the instant case, Sutton describes three of Ports America's actions that can be reasonably read as allegations of disparate treatment – requesting Castillo, a white man, for labor more

---

[76] Sutton's ability to show evidence of an adverse employment action is discussed in full later in this Order & Reasons. *See* discussion *infra* at Section III.B.3.

frequently than Sutton;[77] promoting newly hired white male and female employees more promptly than Sutton;[78] and failing to discipline a white female employee for the same conduct for which Sutton was disciplined.[79]  In each of these allegations of discrimination, Sutton fails to create a genuine dispute of material fact as to whether the comparators to which she points are similarly situated to her for purposes of race- and sex-based discrimination.  The first potential comparator, Castillo, is insufficient to carry Sutton's summary-judgment burden on either claim.  She admits that she is a casual laborer, whereas Castillo has "'Class A seniority.'"[80]  Therefore, she cannot show that the two "held the same job" such that their circumstances are "nearly identical."  *Id.* at 651.  The second and third potential comparators – the "newly hired white male and female employees" who were allegedly promoted more quickly than Sutton, and the "white female" who was allegedly not disciplined for conduct that Sutton was disciplined – also fail to satisfy Sutton's summary-judgment burden.  First, to the extent that both classes of comparators contain females, the comparators are not outside of her protected class for purposes of her sex-based discrimination claim.  Second, regarding both claims, the comparators' identities are unknown, and there is no evidence in the record or attached to Sutton's opposition memorandum tending to establish that these individuals "'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'"  *Id.* (quoting *Harville*, 945 F.3d at 875).  Thus, because Sutton "gives only a conclusory explanation" regarding why the unknown individuals are appropriate comparators, she fails to make out a *prima facie* case of sex- or race-based discrimination.  *See id.* at 652 (observing that

---

[77] R. Doc. 26 at 13.  Although Sutton does not allege that this incident is sex-based discrimination in her opposition, it appears that Ports America understands this to be one of Sutton's allegations of sex-based discrimination. *See* R. Doc. 15-1 at 9-10.  As such, for completeness of discussion, the Court assumes it is one of Sutton's allegations of sex-based discrimination.

[78] R. Doc. 26 at 14.

[79] *Id.*

[80] R. Doc. 26-1 at 1-2.

because a plaintiff made only conclusory arguments that a comparator was similar, she failed to establish a *prima facie* claim of discrimination); *Ayorinde*, 121 F.4th at 507 (finding that, where plaintiff merely "asserts in a conclusory fashion" that an individual is similarly situated, a discrimination claim fails).

### 3. Title VII Retaliation Claim

"Title VII protects an employee … from retaliation for complaining about the types of discrimination it prohibits." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) (quotation omitted). "A Title VII retaliation plaintiff must establish that (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017) (citing *Zamora v. City of Hou.*, 798 F.3d 326, 331 (5th Cir. 2015)). The *McDonnell Douglas* burden-shifting framework applicable to Title VII discrimination claims also applies to Title VII retaliation claims. *Shahrashoob*, 125 F.4th at 652 (citing *Saketoo v. Admin'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022)).

At the outset, the Court notes that Ports America provided evidence purportedly relevant to Sutton's retaliation claim in its reply that was not included in its motion – namely, time records of Sutton's daily labor at Ports America. However, because Sutton filed no surreply, this Court may not consider arguments raised or evidence offered for the first time in Ports America's reply.[81]

---

[81] In any event, especially considering Sutton had no chance to rebut them, the evidence and arguments which Ports America asserts for the first time in its reply do not establish that there is no genuine dispute of material fact as to Sutton's *prima facie* retaliation claim. For example, in its reply, Ports America supplies a listing of multi-day breaks in Sutton's assignment to Ports America's Nashville Avenue terminal to argue that such multi-day breaks were normal, and thus not retaliatory. R. Doc. 27 at 5-7. However, it ignores that Sutton also worked at Ports America's terminals at Louisiana Avenue and Napoleon Avenue, and that she may have been assigned to work at those terminals during her breaks at the Nashville Avenue terminal, thus defeating its argument that such breaks were normal. Indeed, its evidence shows that during at least one break in Sutton's assignment at the Nashville Avenue terminal, she was assigned to the Napoleon Avenue terminal. *Compare id.* at 6 (pointing to a 67-day break in Sutton's assignment to

*See Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (citing *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022)) ("[W]hen a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence.").  On the appropriate record, the Court now considers the merits of the parties' properly raised arguments.

### a.  *Prima Facie* Elements

In the present case, Ports America asserts it is entitled to summary judgment on two elements: the casual-connection element and the adverse-employment-action element.  However, Sutton has established a genuine dispute of material fact with respect to both elements.

An "adverse employment action" under Title VII includes "discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of [an individual's] employment." *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502-03 (5th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). Ports America does not contend that Sutton's decreased number of job assignments does not amount to an adverse employment action.  Instead, it argues that Sutton cannot establish that Ports America was the entity that took the action against her.  This is so, it says, because the Union, rather than it, chooses which daily laborers are called to work.  However, Sutton provides sworn testimony from Hoelzel, the Union president, that Sutton "was regularly requested by name by Ports America as a Casual worker throughout 2023," but "[a]t some point around November 2023, Ports America stopped requesting Ms. Sutton."[82]  She also attaches a declaration in which she testifies that she "was frequently requested by name by Ports America to fill job assignments" but

---

the Nashville Avenue terminal between April 25, 2025, and July 2, 2025), *with* R. Doc. 27-2 at 2 (indicating that Sutton was assigned to work at Ports America's Napoleon Avenue terminal no less than nine times between April 25, 2025, and July 2, 2025).

[82] R. Doc. 26-4 at 2.

"was not requested to work at all for approximately two weeks" following her report of harassment.[83]  As a result, Sutton has created a genuine dispute of material fact as to whether Ports America ceased to request her by name for daily labor, thereby taking an adverse employment action against her.

Ports America argues that Hoelzel's and Sutton's declarations should be rejected on the basis of the sham-affidavit doctrine,[84] which provides that a party may not defeat a summary-judgment motion "'using an affidavit that impeaches, without explanation, sworn testimony.'" *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)).  The Fifth Circuit, however, has cautioned that "the bar for applying the doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Id.*  For a court to reject the evidence, the affidavit must be "'so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham.'" *Id.* (quoting *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 767 (5th Cir. 1988)).  And even if an affidavit "'is at odds with'" the affiant's prior statements, most such discrepancies in testimony should be left to a jury's credibility determination. *Id.* (quoting *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019)).

Ports America's argument for invoking the sham-affidavit doctrine does not meet the Fifth Circuit's high standard.  First, it argues that Sutton's declaration is a sham because she "was questioned extensively during her deposition about her allegations of retaliation," and she did not "mention the notion of having been previously requested by name" for daily labor by Ports America.[85]  Even so, Sutton's current assertion about requests for labor is not "'so markedly

---

[83] R. Doc. 26-8 at 2.
[84] R. Doc. 27 at 4 n.8.
[85] *Id.*

inconsistent with [her] prior deposition as to constitute an obvious sham.'" *Id.* (quoting *Clark*, 854 F.2d at 767).

Second, the grounds on which Ports America attempts to invoke the sham-affidavit doctrine with regards to Hoelzel's declaration is an inconsistency related to Hoelzel's personal knowledge of Ports America's texts requesting Sutton for daily labor by name. It says that Hoelzel, when being deposed in his personal capacity, "disclaimed any personal responsibility for dispatching Union workers in response to the employers' daily requests for labor."[86] So, says Ports America, Hoelzel cannot now testify on this point based on any personal knowledge of daily text messages which identify and request Sutton by name to work for Ports America.[87] However, in the same deposition which Ports America claims Hoelzel disclaims personal knowledge of the texts, Hoelzel testified that Ports America makes requests by means of "a group text that involves CICs [*i.e.*, clerks in charge], management, myself, and my dispatchers," and that those texts came to his phone, thereby explaining the grounds for his personal knowledge.[88] Thus, Ports America's invocation of the sham-affidavit doctrine fails.

Ports America also argues that Sutton cannot show a causal connection between the adverse action and her protected activity. "To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between her protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1001 (citing *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020)). Sutton alleges that she reported Castillo's sexually harassing conduct on November 22, 2023, and that she was removed from the schedule "immediately" following this report.[89] In his declaration,

---

[86] *Id.*
[87] *Id.*
[88] R. Doc. 26-9 at 13.
[89] R. Doc. 26 at 12.

Hoelzel explains that Ports America's requests for Sutton by name ceased "[a]t some point around November 2023."[90]  The Fifth Circuit has held that periods of two-and-a-half months, two months, and six-and-a-half weeks all were close enough, temporally, to show a causal connection in other Title VII retaliation cases.  *See Brown*, 969 F.3d at 578 (collecting cases).  Construing all evidence in the light most favorable to Sutton, Hoelzel's declaration indicates that the adverse action occurred sufficiently soon enough after Sutton's protected activity – reporting Castillo's sexually harassing conduct – as to tend towards showing a causal connection.  As such, Sutton has, at the very least, created a genuine dispute of material fact as to causation.

### b.  Ports America's Burden of Production

Given that Sutton has carried her summary-judgment burden on the disputed *prima facie* elements of retaliation, the burden of production now shifts back to Ports America, in accordance with the *McDonnell Douglas* framework, to provide a legitimate, nonretaliatory reason for firing Sutton.  "'This burden is one of production, not persuasion,' and it involves no credibility assessment." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  Where the Fifth Circuit has found that an employer's reason is legitimate and nonretaliatory, the employer generally points to specific acts or omissions or specific circumstances which motivates the employer's decision to take an adverse action.  For example, the Fifth Circuit has generally accepted an employee's poor job performance as a legitimate, nonretaliatory reason for an adverse employment decision.  *See, e.g.*, *Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023); *Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 295 (5th Cir. 2020); *Farmer v. Turn Key Installation, L.L.C.*, 812 F. App'x 200, 203 (5th Cir. 2020).  It has also accepted a reduction in an employer's workforce.  *Diaz v. Kaplan*

---

[90] R. Doc. 26-4 at 2.

*Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016); *Jordan v. Turner Indus. Grp., L.L.C.*, 642 F. App'x 420, 422 (5th Cir. 2016).

Ports America says that its legitimate, nonretaliatory reasons for any adverse employment actions against Sutton include the following: "(i) because [the actions] were compelled by or in keeping with the terms of the applicable CBA; (ii) because the Union and not [Ports America] was responsible for dispatching [Sutton] to her work assignments on any given day … ; and/or (iii) based upon demonstrable differences between [Sutton] and any alleged comparator to whom [Sutton] may point."[91]  Because these reasons do not point to a factor which induced Ports America to stop requesting Sutton by name, they fail to establish a legitimate, nonretaliatory reason for the identified adverse employment action.  To be sure, regarding its first-cited reason, Ports America does not allege that the CBA compelled it to stop requesting Sutton.  And even if its cessation of requests for Sutton specifically is "in keeping with the terms of the applicable CBA," Ports America points to no reason that motivated its decision to stop requesting her.  As a matter of logic, simply explaining that an adverse action taken at the employer's will is within an employer's authority does not necessarily mean that the act is not retaliatory.  Next, this Court cannot accept Ports America's second-cited reason – that the Union, rather than it, was responsible for dispatching Sutton – as a legitimate, nonretaliatory reason for the adverse action when Sutton alleges that Ports America stopped requesting that the Union dispatch her.  Finally, Ports America's third-cited reason, that the action was "based upon demonstrable differences" between Sutton and any comparator is inapplicable in the context of Sutton's retaliation claim.  Thus, Ports America fails to point to a legitimate, nonretaliatory reason, and does not satisfy its summary-judgment burden of production on Sutton's Title VII retaliation claim.

---

[91] R. Doc. 15-1 at 5 n.12.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Ports America's motion for summary judgment (R. Doc. 15) is GRANTED IN PART and DENIED IN PART.  Sutton's claims for sexual harassment, sex-based discrimination, and race-based discrimination are dismissed with prejudice.

New Orleans, Louisiana, this 6th day of November, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE